IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| PLAINTIFF, | § § | CIVIL ACTION NO. 4:23-cv-100 |
| v. | § § | JURY TRIAL DEMANDED |
| RONALD VEAL, | § § § | |
| DEFENDANT | § § | |

## COMPLAINT

This is an action by the United States of America against Ronald Veal to recover treble damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 to 3733 and to recover money for the common law or equitable cause of action for payment by mistake based upon Mr. Veal's receipt of Paycheck Protection Program ("PPP") funds to which he was not lawfully entitled.

## JURISDICTION AND VENUE

1.  This action arises under the FCA, 31 U.S.C. §§ 3729 to 3733, and the common law.

2.  This Court has subject matter jurisdiction over this action, including claims asserted under the common law, under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3.  This Court has personal jurisdiction over Mr. Veal under 31 U.S.C. § 3732(a) because Mr. Veal committed the alleged acts in the Southern District of Texas.

4. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in the Southern District of Texas – specifically the Houston Division.

## PARTIES

5. Plaintiff United States of America brings this action on behalf of the United States Small Business Administration ("SBA"), which guarantees and funds certain loans for small businesses in the United States.

6. Defendant Ronald Veal is a correctional officer for the United States Bureau of Prisons ("BOP"). He is presently a resident of Calcasieu Parish, Louisiana, but at all times relevant to this Complaint, he was a resident of Harris County, Texas.

## LEGAL AND REGULATORY BACKGROUND

### A. The Paycheck Protection Program

7. In or around March of 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. It was designed to provide emergency financial assistance to Americans suffering from the economic effects of the COVID-19 pandemic. One source of relief the CARES Act provided was the authorization of forgivable loans to small businesses for payroll and other certain expenses. This program was referred to as the Paycheck Protection Program ("PPP" or the "Program").

8. To obtain a PPP loan, a qualifying business submitted a PPP loan application, signed by the business's authorized representative. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to

provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the Program. Additionally, the Program required loan applicants to provide documentation confirming their payroll expenses.

9. A participating lender processed a PPP loan application. If the participating lender approved a PPP loan application, the participating lender funded the PPP loan using its own monies. While the participating lender issued the PPP loan, the SBA paid the PPP loan application processing fee to the lending institution on the PPP applicant's behalf and 100% guaranteed the PPP loan. In processing the loan, the lender transmitted data from the application to the SBA, including information about the borrower, the total amount of the loan, and the listed number of employees.

10. Under program rules, the business was required to use PPP loan proceeds on certain expenses, such as payroll costs, mortgage interest, rent, and utilities. The PPP rules allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

11. The application process required the eligible recipient to make the following good faith certifications and acknowledgments to obtain a PPP loan:

    a. That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

    b. That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

c. That the applicant business was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d. That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the PPP;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including

   under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

 k. That the lender would confirm the eligible loan amount using the documents the applicant submitted.

### B. The False Claims Act

12. The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

13. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $12,537 to a maximum of $25,076. 28 C.F.R. § 85.5.

14. For purposes of the FCA, the terms "knowing" and "knowingly"

(A) mean that a person, with respect to information—

 (i) has actual knowledge of the information;

 (ii) acts in deliberate ignorance of the truth or falsity of the information; or

 (iii) acts in reckless disregard of the truth or falsity of the information; and

5

(B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

15. Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

16. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

## FACTUAL ALLEGATIONS

17. On April 18, 2021, an unnamed individual ("Individual 1") submitted Mr. Veal's PPP loan application on his behalf with his consent to an unnamed financial institution ("Bank 1").

18. Mr. Veal's PPP loan application claimed he owned and operated a catering business called Vealstone, LLC as a sole proprietorship.

19. The PPP loan application reported his payroll costs to be $115,500.00, which was used to calculate the PPP loan amount for which he was eligible as an alleged sole proprietorship.

20. This misrepresentation caused Mr. Veal to receive the maximum PPP loan under the PPP Rules, to which he was not entitled.

21. On or about April 29, 2021, Mr. Veal received a PPP loan in the amount of $20,833 based upon misrepresentations in a PPP loan application submitted to Bank 1.

22. Mr. Veal knowingly used the PPP loan funds for unauthorized purposes.

23. The SBA paid a total of $2,500 in processing fees to Bank 1 in connection with the PPP loan disbursed to Mr. Veal.

24. On or about August 4, 2022, Special Agents with the United States Department of Justice, Office of the Investigator General spoke with Mr. Veal at Memorial Villages Police Department in Houston, Texas.

25. In sum and substance, Mr. Veal relayed the following during the interview:

    a. Mr. Veal met Individual 1 on social media, who claimed she could "get him a PPP loan" on his behalf.

    b. Mr. Veal provided his personal identifying information (*i.e.*, personal bank account information, social security number, home address, etc.) to Individual 1 to secure the PPP loan on his behalf.

    c. Mr. Veal confirmed that Individual 1 signed and submitted the PPP loan application on his behalf with his consent on April 18, 2021.

    d. Mr. Veal confirmed that on April 19, 2021, Individual 1 registered an alleged catering business called "Vealstone, LLC" in his name.

    e. The PPP loan application purported that Mr. Veal operated Vealstone, LLC as a sole proprietorship with no employees and that Vealstone, LLC was in operation on February 15, 2020. Mr. Veal confirmed that he has never and does not presently operate a catering business. At all relevant times, Mr. Veal has been and is presently an employee of BOP.

    f. To receive the maximum loan amount of $20,833, the PPP rules required Mr. Veal to operate a business with total eligible gross income of at least $100,000 for the twelve months preceding the loan. Mr. Veal's PPP loan application stated that Vealstone, LLC operated with a gross income of $115,500.00 for the twelve months preceding the loan. Mr. Veal admitted he did not earn the

  requisite income during the covered period that would yield the amount of the loan received.

g. After receipt of the funds, Mr. Veal said that he paid a $2,500 "commission" to Individual 1 for preparing his PPP loan application.

h. Mr. Veal confirmed that he did not supply Individual 1 with any supporting documentation that would justify the PPP loan amount, that Individual 1 generated and prepared the necessary information on the PPP loan application on his behalf with his consent, and that he knew the information on the PPP loan application and resulting PPP loan amount were false.

i. Mr. Veal confirmed the certifications on SBA Form 2483-C that Individual 1 submitted on his behalf and with his consent to obtain the PPP loan were, therefore, false.

26. False statements and documents were submitted to Bank 1, misrepresenting the amount of eligible payroll for Mr. Veal's allegedly eligible business, Vealstone, LLC, and Mr. Veal's use of the PPP loan proceeds. These false statements in the PPP loan application were material to Bank 1's processing and payment of the PPP loan, for which the SBA paid $2,500 in processing fees.

27. Because of Mr. Veal's acts, the United States sustained damages, and, as a result, the United States is entitled to treble damages under the FCA, plus all civil penalties authorized by law. Mr. Veal is liable to the United States for these damages and penalties.

## COUNT I
## False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
## Presenting or Causing False Claims to Be Presented for Payment

28. The United States realleges and incorporates by reference all allegations set out in all paragraphs of this Complaint.

29. Mr. Veal knowingly presented or caused to be presented, materially false and fraudulent claims for payment or approval to the United States. Specifically, Mr. Veal caused Individual 1 to submit a PPP loan application to Bank 1 on his behalf and the SBA to pay the $2,500 loan processing fee for his PPP loan application. Mr. Veal obtained a PPP loan for an amount he was not entitled to, in violation of the PPP Rules.

30. These false claims were material to the United States' payment decision. Had the United States known that Mr. Veal did not own a qualifying business for a PPP loan, the United States would not have paid the PPP loan processing fee.

31. Mr. Veal presented or caused to be presented such claims with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

32. By virtue of Mr. Veal's acts and these false claims, the United States sustained damages for the processing fee paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II
## False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
## Making or Using False Records or Statements

33. The United States realleges and incorporates by reference all allegations set out in all paragraphs of this Complaint.

34. Mr. Veal knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims. Specifically, Mr. Veal knowingly caused Individual 1 to submit a PPP loan application, containing misrepresentations about his ownership of a qualifying business, its payroll costs, and its intended use of PPP funds, on his behalf.

35. Mr. Veal made or used, or caused to be made or used, such false records or statements with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

36. These false records and statements were material to the United States' payment decisions. Had the United States known that Mr. Veal did own a qualifying business for a PPP loan, the United States would not have paid the PPP loan processing fee to Bank 1 for Mr. Veal's PPP loan application.

37. By virtue of Mr. Veal's acts and these false statements, the United States was damaged for the processing fee paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

### COUNT III
### Payment by Mistake

38. The United States realleges and incorporates by reference all allegations set out in all paragraphs of this Complaint.

39. This is a claim for the recovery of monies the United States paid directly or indirectly to Mr. Veal as a result of mistaken understandings of fact.

40. The United States' mistaken understandings of fact were material to its decision to pay the PPP loan processing fee to Bank 1 and for Bank 1 to approve the PPP loan provided to Mr. Veal.

41. The United States, acting in reasonable reliance on the truthfulness of the statements contained in Mr. Veal's PPP loan application, paid the PPP loan processing fee to Bank 1, and Bank 1 approved a loan to Mr. Veal to which he was not entitled.

42. Thus, the United States is entitled to recoup the amount of the PPP loan processing fee plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

The United States requests that the Court enter judgment against Mr. Veal and grant the following relief:

(a) On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for the processing fee paid by the United States to Bank 1, together with the maximum civil penalties allowed by law;

(b) On Count III (Payment by Mistake), awarding the United States the amount mistakenly paid to Mr. Veal;

(c) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

(d) granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

Respectfully submitted this 11th day of January, 2023.

ALAMDAR S. HAMDANI
United States Attorney

By: */s/ Laura E. Collins*
LAURA E. COLLINS
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas

Texas Bar No. 24081520
S.D. Tex. ID No. 3738464
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9000
Facsimile: (713) 718-3033
Email:  Laura.Collins@usdoj.gov

*Attorneys for the United States of America*